UNION PAC. R. CO. et al. v. ALEXANDER et al.

(Circuit Court, D. Colorado. December 30, 1901.)

No. 4,251.

1. JURISDICTION OF FEDERAL COURTS—SUITS AGAINST STATE.

The eleventh constitutional amendment does not exclude from the jurisdiction of a federal court a suit against individuals holding official positions under a state to prevent them, under color of an unconstitutional statute, from committing by some positive act a wrong or trespass in which the plaintiff has a legal interest.[1]

---

[1] Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.

**2.** EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.
A bill by railroad companies to enjoin a board, created by a state statute alleged to be unconstitutional, from assessing the property of complainants for taxation, states a cause of action of equitable cognizance.

**8.** FEDERAL COURTS—DETERMINING VALIDITY OF STATE STATUTES.
While a federal court will not willingly pronounce a state statute unconstitutional in advance of a decision thereon by the supreme court of the state, it cannot avoid the duty of determining the validity of an act where the question is properly presented for its decision.

**4.** TAXATION—ASSESSMENT—POWERS OF COUNTY ASSESSORS UNDER COLORADO CONSTITUTION.
Under the constitution of Colorado, which creates the office of county assessor, but without specifying his duties, his powers are limited to the performance of the well-understood duties incident to such office, which consist of the assessment of the taxable property within his county. He has no power to act outside the county of which he is an officer, nor can he be vested with such power by the legislature.

**5.** SAME—TAXATION OF RAILROAD PROPERTY—VALIDITY OF COLORADO STATUTE.
The act of legislature of Colorado of 1901, which requires all the county assessors of the state to meet annually, and elect from their number a "state board of assessors," which shall assess f r taxation all of the property in the state owned, used, or controlled by railroad or telegraph companies, etc., is unconstitutional and void, since the assessors, as such, have no power to make assessments outside their respective counties, and the constitution empowers the legislature to create new officers only for counties, townships, or municipalities.

In Equity.    On motion for preliminary injunction.

This case was brought by the Union Pacific Railroad Company and by the Atchison, Topeka & Santa Fé Railway Company, both companies engaged in operating railroad lines passing through several counties of the state, under and by virtue of the laws of the state of Colorado; and by the complainant the Pullman Company, as owner of railroad cars which are run over the lines of railroad of nearly all of the railroad companies of the state. These complainants say that prior to April 1, 1901, they have paid all the taxes levied against their property assessed under the provisions of the revenue law of 1891. This law provided that the various railroad companies doing business in the state of Colorado should furnish to the state board of equalization a sworn statement showing in detail the respective property owned, operated, or controlled by each of the railroad companies in the state, as well as the proportion and value of the property owned by them in each county. This statement was to be made to the said board of equalization prior to the 15th day of March, 1901. It then became the duty of the board to assess the property of these complainants for the purpose of taxation for the year 1901, and to also assess the property of the other railroad corporations in the state for a similar purpose. As a means to that end, it became the duty of the state board of equalization to transmit, prior to the 1st day of May, 1901, to each county clerk of each county through which the tracks of these complainant companies ran, a statement showing the main track of such railway, its assessed value per mile, and to fix a pro rata distribution per mile of the assessed value for each county of the state through which the railroad ran. The state board of equalization refused to make any assessment because of an enactment of the general assembly of the state of Colorado, known as "House Bill No. 1," passed the 1st day of April, 1901, and which the board claims deprived them of the right to make such an assessment. Thereupon these complainants, in conjunction with several other railr ad companies, began in a state court a suit for mandamus, setting up the claim that the law of 1891 made it the duty of the state board of equalization to assess their properties, the refusal of the board to assess their properties, and the reasons given for such refusal. In the suit for mandamus complainants claimed that house bill No. 1 was not

legally or constitutionally passed, and upon the hearing of the complaint and answer the state court issued a peremptory writ of mandamus commanding the board of equalization to meet, and proceed to assess the properties of the railroad and other companies under the law of 1891. Section 88 of said house bill No. 1 provides that all the county assessors of the state shall meet at the capitol, and compare their assessments, and if, upon comparison, any class of property is too high or too low, they shall correct the same; and, further: "It shall be the duty of the assessors of the state at such annual meeting to elect of their number thirteen assessors who shall constitute a board known as the 'State Board of Assessors;'" section 88a further providing for this board of assessors meeting in August of each year for the purpose "to assess all the property of this state owned, used, or controlled by railway companies, telegraph, telephone, and sleeping or other palace car companies." In the present suit the complainants claim that the constitution of the state sets forth the duty of the county assessors to assess in their several and respective counties the taxable property in each county, and that the legislative assembly had no power to authorize any county assessor to assess property except that situated within the county for which he was elected assessor. The bill prays f·r an injunction restraining the respondents from transmitting to the county clerks of the state any statement of assessment made under the provisions of the revenue act of 1901.

Willard Teller and Clayton C. Dorley, for complainant Union Pac. R. Co.

Rogers, Cuthbert & Ellis, for complainant Pullman Co.

Charles E. Gast and Henry T. Rogers, for complainant Atchison, T. & S. F. Ry. Co.

RINER, District Judge. · This case is before the court upon the application of complainants for a temporary injunction. The case involves important questions, and was argued with distinguished ability upon both sides. The court wishes to acknowledge its indebtedness to counsel for valuable assistance in the investigation of the questions presented for determination. It was intimated at the conclusion of the argument that it was a matter of importance to all parties concerned that a speedy decision be announced in the case. In order to comply with this suggestion, I cannot take the time necessary to notice at length, in the form of a written opinion, the several propositions so ably discussed at the argument. I have, however, carefully considered the arguments of counsel, both oral and by brief, and in the course of my investigations have examined all of the authorities cited, and have reached a conclusion which I will briefly announce.

The jurisdiction of the court is challenged, and this is the first question to be considered. The bill in this case, upon its face, contains the necessary allegations of diverse citizenship, etc., to give this court jurisdiction. Is the state really, though not nominally, a defendant, thus bringing the case within the eleventh amendment to the constitution of the United States, which prohibits this court from taking jurisdiction, not only in suits brought against the state by name, but also suits brought against its officers, agents, and representatives, where the state, though not named as a defendant, is the real party against which relief is asked and the judgment will operate? The object and purpose of that amendment was to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at

the instance of private parties. In other words, it takes away from the individual the power to bring a state of the Union, invested with the sovereignty not delegated to the United States, into court as a defendant to answer his complaint, and this whether he be a citizen of another state or an alien. The reason is that the course of a state's public policy and the administration of its public affairs should not be subject to and controlled by the mandates of judicial tribunals without its consent, and in favor of individual interests. Therefore it is that the supreme court of the United States has held that the amendment covers not only suits brought against the state by name, but those also against its officers, agents, and representatives, where the state, though not named as such, is nevertheless the real party against which in fact the relief is asked, and against which the decree effectively operates. This provision of the constitution, however, does not take away from the citizen the right to bring a suit in the federal court against individual defendants, who, under color of the authority of unconstitutional legislation by the state, are guilty of personal trespasses and wrongs; nor to forbid suits against officers in their official capacity, either to arrest or direct their official action by injunction or otherwise, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest. The rule is perfectly well settled that in the construction of the constitution and laws of a state the federal court will follow the decisions of the highest courts of the state, unless they conflict with or impair the efficacy of some principle of the federal constitution, of a federal statute, or a rule of general commercial law. The reason for this rule is that it avoids confusion and disorder, and avoids making the claims and rights of suitors depend, not upon settled law, but upon the contingency of litigation respecting them being before a state or a federal court. Conflicts of this sort are certainly to be avoided, if possible; and this can best be done by leaving the courts of one sovereignty within their legitimate sphere to be independent of those of another, each respecting the adjudications of the other on subjects properly within its jurisdiction. There is a wide difference between a suit against individuals holding official positions under a state to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officials of a state merely to test the constitutionality of a state statute in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In this case no act of political administration is challenged, no contract of the state is involved, and no judgment can be rendered which affects it as a corporate entity. It is affected and interested only as it is interested and affected by the welfare of its citizens. The legislation involved is governmental in its nature, not contractual. No obligation that the state has entered into, no contract or promise that it has made is questioned. The bill rests solely upon the proposition that the property rights of the complainants are involved by the threatened actions of the defendants, and this is a judicial inquiry to see whether they have authority for their actions,—whether the law

upon which they rely is valid and constitutional, or sufficient to justify the action which they are taking. It was insisted at the argument that the complainants had an adequate remedy at law, and therefore a court of equity had no jurisdiction. The rule, as I understand it, is that the jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances. Within this rule, I think, the bill states a case of equitable cognizance, and the conclusion reached is that the court has jurisdiction.

This brings us to the consideration of the second question, viz.: Does the act of the legislature in controversy in this case conflict with the provisions of the constitution of the state? It was insisted at the argument that the federal courts will not willingly pronounce, in advance of the state courts, an act unconstitutional. This is quite true, but it is conceded in one of the briefs handed to me by defendants' counsel that the supreme court has not passed upon the constitutionality of this act, and in the language of Chief Justice Marshall in the case of Cohen v. Virginia, 6 Wheat. 264, 5 L. Ed. 257, the judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it is brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The constitution of the state of Colorado authorizes the election of a governor, lieutenant governor, secretary of state, state treasurer, state auditor, attorney general, and a superintendent of public instruction, and these officers constitute the executive department. It further provides that they shall keep the public records, books, and papers, and perform such duties as are prescribed by the constitution or by law. It also makes provision for the election of certain county officers, such as county commissioners, clerk (who shall be ex officio recorder of deeds), sheriff, coroner, treasurer, superintendent of schools, surveyor, and county assessor, in each county. These county officers are elected every alternate year. A vacancy occurring in the board of county commissioners of a county is to be filled by appointment by the governor, and a vacancy occurring in any other county office is to be filled by the board of county commissioners of the county wherein the vacancy occurs. Section 12 of article 14 of the constitution provides:

"The general assembly shall provide for the election or appointment of such other county, township, or municipal officers as public convenience may require, and their terms of office shall be as prescribed by law, not in any case to exceed two years."

The constitution further provides that the governor, auditor, treasurer, secretary of state, and attorney general shall constitute a state board of equalization, and that the county commissioners of each county shall constitute a board of equalization for the county in which they are elected. It is made the duty of the state board of equalization to adjust and equalize the values of real and personal

property among the several counties of the state, and it is made the duty of the county board of equalization to adjust and equalize the valuation of real and personal property within their respective counties. The boards are further required to perform such other duties as may be prescribed by law. By an act of the legislature of Colorado passed in 1877 power was conferred upon the state board of equalization to assess railroad property within the state, and this was held by the supreme court of the state to be a valid exercise of legislative power, because of the constitutional provision that the board may perform "such other duties as may be prescribed by law," and that its effect was to take away from the county assessors the right to assess this class of property within their respective counties. The act under consideration attempts to transfer the power of assessing this class of property from the state board of equalization to what is termed in the act a "state board of assessors"; this board to be composed of 13 assessors, to be selected from the assessors of the several counties in the state, of which, I think there are 56 or 57. The act provides that the assessors of each of the several counties in the state of Colorado shall on the first Tuesday of August in each year meet at the capitol, and elect 13 assessors out of their number, who shall constitute a board known as the "State Board of Assessors." It further provides that the board so selected shall organize and convene immediately upon their election, and proceed to assess all the property in this state owned and controlled by railroad companies, telegraph, telephone, and sleeping or other palace car companies, except real estate owned by any railroad company not used for the convenient and proper operation of its railway. This property is to be assessed in the same manner as other real estate in the county where the same is situated. The manner of choosing the 13 who constitute the board is as follows: The counties of the state are divided into classes. Those of the first class are to elect one assessor, those of the second class two, those of the third class three, those of the fourth class five, and those of the fifth class two. They are to be chosen by vote of the assessors from their respective classes out of the counties from which they were elected. While the constitution does not define in express terms what the duties of an assessor shall be, yet those duties are well understood. He is to assess the taxable property within his county, and I think it is perfectly well settled that beyond that he has no power to act, unless such power is expressly conferred. Being a constitutional officer, his powers are such as are defined by the constitution, or such as are necessarily incident to the duties of his office. No authority is conferred by the constitution upon assessors to perform duties other than the duties of county assessors. These duties he must perform within his county, and must assess all of the taxable property in his county, unless that power is taken away and lodged elsewhere by virtue of some legislation enacted under express authority of the constitution. The only power so conferred is that which authorizes the state and county boards of equalization to perform such other duties as may be prescribed by law. I find no authority whatever in the constitution empowering an assessor to perform the duties of his office outside of .

the county for which he was elected, and I conclude that the legislature was wholly without power or authority to clothe the assessors of the state as a body with the right to select and appoint 13 of their number to do an act which they could not do by virtue of their office as county assessors under the provisions of the constitution. Having reached this conclusion, it becomes unnecessary to notice the other question discussed.

A preliminary injunction will issue in accordance with the terms of the restraining order. The complainants will be required to give a bond within four days in the sum of $25,000 to answer all damages which the defendants or the persons injured by the order may sustain if it shall be finally decided that the order was improperly issued.